TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JENNA W. LONG (Cal. Bar No. 332192)
KRISTIN N. SPENCER (Cal. Bar No. 294692)
Assistant United States Attorneys
General Crimes Section/Santa Ana Branch Office
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8692/714-338-3531
    Facsimile: (213) 894-0141
    E-mail:    jenna.long@usdoj.gov
            kristin.spencer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>            v.<br><br>ANTHONY TRENELL LEWIS,<br><br>        Defendant. | No. SA CR 20-133(B)-AB-1<br><br><u>GOVERNMENT'S TRIAL BRIEF</u><br><br>Trial Date: May 11, 2022<br>Trial Time: 8:30 a.m.<br>Location:  Courtroom of the Hon.<br>           Andre Birotte Jr. |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Kristin N. Spencer and Jenna W. Long, hereby files its trial memorandum for the trial of defendant Anthony Trenell Lewis.

    The government respectfully reserves the right to file

//

//

additional memoranda as may become appropriate during the course of trial.

Dated:  May 4, 2022              Respectfully submitted,

                                 TRACY L. WILKISON
                                 United States Attorney

                                 SCOTT M. GARRINGER
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 /s/ *Kristin N. Spencer*
                                 KRISTIN N. SPENCER
                                 JENNA W. LONG
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

ii

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................1

II.   STATUS OF THE CASE..........................................1

III.  THE INDICTMENT..............................................3

IV.   STATEMENT OF FACTS..........................................3

V.    CHARGED STATUTES AND ELEMENTS...............................5

    A.    Count One.............................................5

    B.    Count Two.............................................6

    C.    Count Three...........................................6

VI.   LEGAL AND EVIDENTIARY ISSUES................................7

    A.    Motions in Limine.....................................7

    B.    Stipulations..........................................7

    C.    Authentication and Identification.....................7

    D.    Duplicates............................................8

    E.    Defendant's Prior Statements..........................8

    F.    Co-Conspirator Statements.............................9

    G.    Audio Recording and Transcript.......................12

    H.    Photographic Evidence................................14

    I.    Business Records.....................................14

    J.    Prior Identifications Admissible.....................16

    K.    Expert Witness Testimony.............................17

    L.    Charts and Summary Witnesses.........................18

    M.    Scope of Cross-Examination of Defendant..............20

    N.    Vicarious Liability..................................21

VII.  CONCLUSION.................................................22

**TABLE OF AUTHORITIES**

**CASES**

Bourjaily v. United States,
    483 U.S. 171 (1987)........................................12, 14

Fitzpatrick v. United States,
    178 U.S. 304 (1971)...........................................20

Kennedy v. Los Angeles Police Dep't,
    901 F.2d 702 (9th Cir. 1990)..................................14

La Porte v. United States,
    300 F.2d 878 (9th Cir. 1962)..................................15

Ohio v. Roberts,
    448 U.S. 56 (1980)............................................15

See United States v. Catabran,
    836 F.2d 453 (9th Cir. 1988)..................................15

U-Haul Int'l v. Lumbermans Mutual Casualty Co.,
    576 F.3d 1040 (9th Cir. 2009).................................16

United States v. Alexander,
    48 F.3d 1477 (9th Cir. 1995)..................................20

United States v. Andersson,
    813 F.2d 1450 (9th Cir. 1987).................................17

United States v. Arias-Villanueva,
    998 F.2d 1491 (9th Cir. 1993).................................11

United States v. Baker,
    855 F.2d 1353 (8th Cir. 1988).................................15

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985).................................20

United States v. Blackwood,
    878 F.2d 1200 (9th Cir. 1989).................................13

United States v. Bonallo,
    858 F.2d 1427 (9th Cir. 1988).................................15

United States v. Bridgeforth,
    441 F.3d 864 (9th Cir. 2006)..................................10

United States v. Burreson,
    643 F.2d 1344 (9th Cir. 1981)..................................8

United States v. Castaneda,
    16 F.3d 1504 (9th Cir. 1994)..............................12, 21

ii

United States v. Childs,
    5 F.3d 1328 (9th Cir. 1993)..................................15

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991)..................................8

United States v. De Peri,
    778 F.2d 963 (9th Cir. 1985)..............................13, 19

United States v. Dunn,
    946 F.2d 615 (9th Cir. 1991)..................................18

United States v. Duka,
    671 F.3d 329 (3d Cir. 2011)...................................11

United States v. Elemy,
    656 F.2d 507 (9th Cir. 1981)..................................16

United States v. Freeman,
    498 F.3d 893 (9th Cir. 2007)..................................13

United States v. Gadson,
    763 F.3d 1189 (9th Cir. 2014).................................8

United States v. Gardner,
    611 F.2d 770 (9th Cir. 1980)..................................19

United States v. Gordon,
    844 F.2d 1397 (9th Cir. 1988)................................12

United States v. Hynes,
    467 F.3d 951 (6th Cir. 2006).................................11

United States v. Jarrad,
    754 F.2d 1451 (9th Cir. 1985)................................17

United States v. Kim,
    196 F.3d 1079 (9th Cir. 1999)................................22

United States v. King,
    587 F.2d 956 (9th Cir. 1978).................................12

United States v. Layton,
    720 F.2d 548 (9th Cir. 1983).................................11

United States v. Lechuga,
    888 F.2d 1472 (5th Cir. 1989)................................11

United States v. Limones,
    8 F.3d 1004 (5th Cir. 1993)..................................11

United States v. Lloyd,
    807 F.3d 1128 (9th Cir. 2015)................................10

United States v. May,
        622 F.2d 1000 (9th Cir. 1980)................................14

United States v. McMurray,
        34 F.3d 1405 (8th Cir. 1994)................................12

United States v. Meeks,
        756 F.3d 1115 (8th Cir. 2014)...............................11

United States v. Mehrmanesh,
        682 F.2d 1303 (9th Cir. 1982)...............................20

United States v. Meyers,
        847 F.2d 1408 (9th Cir. 1988)...........................18, 19

United States v. Miranda-Uriarte,
        649 F.2d 1345 (9th Cir. 1981)...............................20

United States v. Nazemian,
        948 F.2d 522 (9th Cir. 1991)................................11

United States v. Norton,
        867 F.2d 1354 (11th Cir. 1989)..............................15

United States v. Noushfar,
        78 F.3d 1442 (9th Cir. 1996)................................13

United States v. Oaxaca,
        569 F.2d 518 (9th Cir. 1978)................................14

United States v. Ortega,
        203 F.3d 675 (9th Cir. 2000).................................9

United States v. Perez,
        658 F.2d 654 (9th Cir. 1981)................................10

United States v. Protac, Inc.,
        869 F.2d 1288 (9th Cir. 1989)...............................10

United States v. Ray,
        930 F.2d 1368 (9th Cir. 1990)...........................14, 15

United States v. Rubino,
        431 F.2d 284 (6th Cir. 1970)................................19

United States v. Santiago,
        837 F.2d 1545 (11th Cir. 1988)..............................11

United States v. Scales,
        594 F.2d 558 (6th Cir. 1979)............................18, 19

United States v. Sherwood,
        98 F.3d 402 (9th Cir. 1996).................................18

<u>United States v. Smith</u>,
     441 F.3d 254 (4th Cir. 2006)....................................11

<u>United States v. Smith</u>,
     591 F.3d 974 (8th Cir. 2010)....................................12

<u>United States v. Stearns</u>,
     550 F.2d 1167 (9th Cir. 1977)...................................14

<u>United States v. Turner</u>,
     528 F.2d 143 (9th Cir. 1975)....................................13

<u>United States v. Vaandering</u>,
     50 F.3d 696, 702 (9th Cir. 1995)................................21

<u>United States v. Valerio</u>,
     441 F.3d 837 (9th Cir. 2006).....................................9

<u>United States v. Yarborough</u>,
     852 F.2d 1522 (9th Cir. 1988)...................................11

<u>United States v. Zavala-Serra</u>,
     853 F.2d 1512 (9th Cir. 1988)...................................11

**<u>RULES</u>**

Fed. R. Evid. 104(a)................................................14

Fed. R. Evid. 611..............................................19, 20

Fed. R. Evid. 702..................................................17

Fed. R. Evid. 801(d)(2)(E).........................................10

Fed. R. Evid. 801(c)................................................9

Fed. R. Evid. 801(d)................................................9

Fed. R. Evid. 801(d)(2).............................................8

Fed. R. Evid. 801(d)(2)(A)..........................................8

Fed. R. Evid. 803(6)...............................................14

Fed. R. Evid. 901(b)...............................................12

Fed. R. Evid. 902(11)..............................................16

Fed. R. Evid. 1003..................................................8

Fed. R. Evid. 1006.................................................18

Fed. R. Evid. 1101(d)(1)...........................................14

## I.   INTRODUCTION

One June 20, 2020, in Santa Ana, California, in the Central District of California, former co-defendant Anthony Marcellus Williams and John Leroy Revels executed a gunpoint robbery set-up by defendant Anthony Trenell Lewis ("defendant") of an unlicensed marijuana dispensary that defendant was a customer of.  Defendant connected Williams with the victims of the robbery, who defendant knew had been robbed previously.  Defendant shared in the proceeds of the robbery upon his return to southern California.  The government now charges defendant with conspiracy to interfere with commerce by robbery, aiding and abetting interference with commerce by robbery, and aiding and abetting the brandishing, use of, or carrying a firearm during and in relation to, or possession of a firearm in furtherance of that robbery, a crime of violence.

## II.  STATUS OF THE CASE

Defendant Anthony Trenell Lewis ("defendant") is currently scheduled to begin trial on May 11, 2022 at 8:30 a.m.  The estimated time for the trial is three court days.  Defendant is detained. Trial by jury has not been waived.

The government expects to call nine witnesses in its case-in-chief. The government estimates the time of direct witness testimony as follows:

| Government Witness | Est. Time | Description of Testimony |
|---|---|---|
| Daniel Casillas | 1 hour | Will testify as to relationship with defendant, text messages with defendant before and after marijuana deal, events during and after the robbery |

| | | |
|---|---|---|
| Santa Ana Police Department ("SAPD") Detective David Prewett | 2 hours | Will testify as to witness identification of co-conspirators, examination of Casillas's cell phone, interview of defendant, and attempts to arrest defendant following interview |
| Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent ("SA") Brian Keese | 15 minutes | Will testify as to photographs taken during search of defendant's Lutz, Florida residence on September 3, 2020 |
| Homeland Security Investigations ("HSI") SA Andrew Flood | 1 hour | Will testify as to general methods of operation of drug dealers and those involved in the robbery of drug dealers |
| Mina Chae | 30 minutes | Will testify as to events during and after the robbery |
| Cheyanne Tovar | 30 minutes | Will testify as to layout of apartment building, communications with Chae following the robbery, and surveillance video from the date of the robbery |
| SAPD Officer Martin Briano | 1 hour | Will testify as to photographs taken of apartment immediately after the robbery |
| Federal Bureau of Investigations ("FBI") SA Jeffrey Bennett | 30 minutes | Will testify as to analysis of cellular data and location of certain telephones at times relevant to events described in the indictment |
| Anthony Williams | 4 hours | Will testify as to his role in the robbery, including his use of a firearm |

2

## III. THE INDICTMENT

Defendant is charged in a three-count Second Superseding Indictment with one count of Conspiracy to Interfere with Commerce by Robbery, in violation of Title 18, United States Code, Section 1951(a); one count of Interference with Commerce by Robbery, in violation of Title 18, United States Code, Section 1951(a); and one count of Brandishing a Firearm During and In Relation to A Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).

## IV.   STATEMENT OF FACTS

The government intends to prove the following facts at trial, among others:

Defendant was a customer of victims Daniel Casillas and Mina Chae's unlicensed marijuana dispensary, which was operated out of an apartment in Santa Ana, California.  On or about June 17, 2020, defendant exchanged texts with victim Daniel Casillas about prices for marijuana products.  During this exchange, defendant told Casillas he had "people on deck"  who were interested in purchasing marijuana and that he could "set something up" between Casillas and the prospective buyers.  On or about June 18, 2020 defendant again told Casillas by text message that he had "people from atlanta still in town" who "wanna shop."

On or about June 19, 2020, defendant again followed up with Casillas by text message and asked if he could give Casillas's number to his "people from atl."  Casillas agreed.  A few hours later, co-conspirator Anthony Williams texted defendant and introduced himself as "Tone[,] Ants [defendant's] boy from Atlanta."  In fact, Williams was not from Atlanta, but rather lived in the Los Angeles area.

Casillas told Williams to come over to "break the ice with me tonite" to "get the ball rolling for tomorrow."  Cell site records confirm that Williams traveled from the Los Angeles area to Orange County and back that night.

On June 20, 2020, Williams and co-conspirator John Revels drove from the Los Angeles area to 9 MacArthur Place in Santa Ana, California.  Casillas led Williams and Revels to victim Mina Chae's apartment.  After a brief conversation, Williams and Revels pointed guns at Chae and Casillas, bound their hands and feet with zip ties, and placed them in a bathroom in the apartment.  Williams and Revels then stole several bags of marijuana and marijuana products from the apartment, which Casillas later estimated to be worth more than $100,000.  Cell site records show that defendant met with Williams in Los Angeles on June 23, 2020, three days after the robbery.

Following the robbery, Casillas contacted defendant by text message regarding the robbery.  Defendant denied any knowledge of the robbery.  Defendant told Casillas that he was attempting to track Williams down in Atlanta, where defendant has said Williams was from, based on the products Williams had stolen from Casillas.  In reality, cell site records confirm that Williams was not in Atlanta, but was in the Los Angeles area, where defendant knew he lived.

In an interview with agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") on or about September 3, 2020, defendant admitted that he was familiar with Williams from being released from prison to the same halfway house and sharing the same probation officer.  Defendant admitted had discussed setting up a deal between Casillas and Williams before it occurred and that he knew Williams had a violent history.  Defendant told the agents that

Williams told him about the robbery and tying up the victims and admitted he talked to Williams about it before, including that defendant knew the victims had been robbed previously and were easy marks.  Defendant also admitted that he had received a portion of the "proceeds" of the robbery--that is, two pounds of marijuana--and transported one pound of marijuana to Florida.  Approximately one pound of marijuana was indeed found in defendant's home in Lutz, Florida on that same day, as well as over $25,000 in cash.

**V.   CHARGED STATUTES AND ELEMENTS**

The violations charged in Counts One through Three of the Second Superseding Indictment, and the elements of those charges, are as follows:

**A.   Count One**

Defendant is charged in count one with Conspiracy to Interfere with Commerce by Robbery in violation of Title 18, United States Code, Section 1951(a).  The government must prove:

 (1)   Beginning on or about June 16, 2020, and continuing at least to July 10, 2020, there was an agreement between two or more persons to commit the crime of interference with commerce by robbery;

 (2)   The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose; and

 (3)   One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The government is not required to prove that the defendant knew or intended that his conduct would have affected interstate or foreign commerce.

**B.    Count Two**

Defendant is charged in count two with Interference with Commerce by Robbery in violation of Title 18, United States Code, Section 1951(a).  The government must prove:

(1)  The defendant knowingly obtained money or property from or in the presence of Daniel Casillas and Mina Chae;

(2)  The defendant did so by means of robbery; and

(3)  The robbery affected interstate commerce[1].

**C.    Count Three**

Defendant is charged in count three with Brandishing a Firearm in Furtherance of a Crime of Violence in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).  The government must prove:

(1)  The defendant committed the crime of interference with commerce by robbery, as charged in count two of the Second Superseding Indictment, which I instruct you is a crime of violence; and

(2)  The defendant either:

(a)  knowingly used, or carried a firearm during and in relation to that crime; <u>or</u>

(b)  knowingly possessed a firearm in furtherance of that crime.

Further, if the jury finds defendant guilty of count three, they will be asked to determine if the firearm was brandished.  A person "brandished" a firearm if he displayed all or part of the firearm, or

---

[1] Drugs or drug proceeds, including marijuana, affect interstate commerce.  United States v. Woodberry, 987 F.3d 1231, 1235 (9th Cir. 2021) (applying the holding in Taylor v. United States, 136 S. Ct. 2074, 2081 (2016) to robbery of licensed marijuana dispensary).

otherwise made the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm was directly visible to that person.

## VI.   LEGAL AND EVIDENTIARY ISSUES

### A.   Motions in Limine

On April 1, 2022, the government filed a motion in limine to admit (1) evidence of co-conspirator Williams's prior conviction for armed bank robbery in the Northern District of Ohio; and (2) photographs taken during a search of defendant's Lutz, Florida residence on September 3, 2020.  At the status conference on April 29, 2022, the Court denied the government's motion as to Williams's prior conviction and granted the motion as to the photographs.  On May 4, 2022, the government filed a motion to reconsider the Court's denial, which remains pending.

### B.   Stipulations

The parties have agreed to a factual stipulation regarding defendant's prior relationship with co-conspirator Williams, in order to sanitize defendant's statement concerning their shared probation officer and time residing at a halfway house.

The parties have further agreed to a factual stipulation regarding defendant's arrest in Mexico, a photograph of the false identification, and a photograph of defendant at the time of his arrest in Mexico.  The parties have agreed that the factual stipulations and accompanying exhibits are admissible into evidence.

### C.   Authentication and Identification

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a

1    finding that the matter in question is what its proponent claims."

2    Under Rule 901(a), evidence should be admitted, despite any

3    challenge, once the government makes a prima facie showing of

4    authenticity or identification so "that a reasonable juror could find

5    in favor of authenticity or identification . . . [because] the

6    probative force of the evidence offered is, ultimately, an issue for

7    the jury." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th

8    Cir. 1991) (cleaned up); see also United States v. Gadson, 763 F.3d

9    1189, 1204 (9th Cir. 2014).

10       **D.   Duplicates**

11       A duplicate is admissible to the same extent as an original

12   unless (1) a genuine question is raised as to the authenticity of the

13   original; or (2) under the circumstances, it would be unfair to admit

14   the duplicate instead of the original. See Fed. R. Evid. 1003.

15       **E.   Defendant's Prior Statements**

16       The government intends to offer two categories of defendant's

17   prior statements:  (1) statements made by defendant to victim Daniel

18   Casillas by text message before and after the robbery; and (2)

19   statements made by defendant to ATF agents in an audio-recorded

20   interview on or about September 3, 2020.

21       Statements by a party opponent when offered against that party

22   are excluded from the hearsay definition.  Fed. R. Evid.

23   801(d)(2)(A).  Thus, each of defendant's own statements may be

24   admitted against him.  When the government offers some of a

25   defendant's prior statements, the door is not thereby opened to the

26   defendant to put in all of his out-of-court statements because, when

27   offered by the defendant, the statements are hearsay.  See Fed. R.

28   Evid. 801(d)(2); United States v. Burreson, 643 F.2d 1344, 1349 (9th

Cir. 1981).  Accordingly, exculpatory statements made by a defendant are hearsay and are not admissible at trial, when offered by that defendant.  See Fed. R. Evid. 801(d), 802; United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).

In addition, Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Thus, statements which are not being admitted for the truth of the matter asserted but rather to show the effect on the person who heard the statement are not hearsay, and can be properly admitted.  Fed. R. Evid. 801(c), 801(d)(2)(A); see also United States v. Valerio, 441 F.3d 837, 844 (9th Cir. 2006) (informant's statements on a recording are admissible to give context to defendant's statements).  SA Stearman and Detective Prewett and Solorio's statements during their interview of defendant are not hearsay, because the statements are not offered to prove the truth of the matter asserted, but rather to give necessary context to defendant's statements.

**F.    Co-Conspirator Statements**

The government may introduce statements by co-conspirators.  The Federal Rules of Evidence define as non-hearsay any "statement [that] is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."[2]

_____

[2] It bears mention that "[t]he requirements for admission of a co-conspirator's statement under Federal Rule of Evidence 801(d)(2)(E) are identical to the requirements of the Confrontation Clause.  Therefore, if a statement is admissible under Rule 801(d)(2)(E), the defendant's right of confrontation is not

*(footnote cont'd on next page)*

Fed. R. Evid. 801(d)(2)(E).  The admission of co-conspirator statements requires only that:  "(1) there was a conspiracy, (2) the defendant and the declarant were participants in the conspiracy, and (3) the statement was made by the declarant during and in furtherance of the conspiracy." Bridgeforth, 441 F.3d at 869.

Regarding the first factor – the existence of the conspiracy - "[t]he question is merely whether there was proof of a sufficient concert of action to show the individuals have been engaged in a joint venture." United States v. Lloyd, 807 F.3d 1128, 1161 (9th Cir. 2015).

Regarding the second factor – that the defendant and declarant were participants in the conspiracy - only slight evidence is necessary to connect a coconspirator to the conspiracy.  The required quantum of proof is minimal.  United States v. Perez, 658 F.2d 654, 658 (9th Cir. 1981).  "[P]articipation as an aider and abetter is sufficient" to establish the requisite connection to the conspiracy, and a declarant need not be charged alongside the defendant or even convicted of conspiracy to admit the declarant's statements under the co-conspirator exception.  United States v. Protac, Inc., 869 F.2d 1288, 1294 (9th Cir. 1989).

Regarding the third factor – that the statement was made in furtherance of the conspiracy – the scope of statements considered to be in furtherance of the conspiracy is quite broad.  It includes statements made to induce or enlist further participation in the group's activities, prompt further action on the part of conspirators, reassure members of a conspiracy's continued existence,

violated." United States v. Bridgeforth, 441 F.3d 864, 868-69 (9th Cir. 2006) (citation omitted).

allay a co-conspirator's fears, and keep co-conspirators abreast of ongoing activities.  United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir. 1993), overruled on other grounds by United States v. Jimenez-Ortega, 472 F.3d 1102 (9th Cir. 2007); United States v. Yarborough, 852 F.2d 1522, 1535-36 (9th Cir. 1988); United States v. Layton, 720 F.2d 548, 557 (9th Cir. 1983), overruled on other grounds by United States v. W.R. Grace, 526 F.3d 499, 506 (9th Cir. 2008) (en banc).[3]  Bragging, boasts, and other comments designed to obtain confidence fall within the exception, United States v. Lechuga, 888 F.2d 1472, 1480 (5th Cir. 1989); United States v. Santiago, 837 F.2d 1545, 1549 (11th Cir. 1988).  So, too, do statements that "identify the coconspirators" or "discuss a coconspirator's role in the conspiracy."  Meeks, 756 F.3d at 1119. In determining whether a statement was made in furtherance of a conspiracy, what matters is the declarant's intent in making the statement, not the statement's effect.  United States v. Nazemian, 948 F.2d 522, 529 (9th Cir. 1991); United States v. Zavala-Serra, 853 F.2d 1512, 1516 (9th Cir. 1988).

---

[3] Many circuit courts have recognized that the "in furtherance" requirement is to be construed broadly.  United States v. Meeks, 756 F.3d 1115, 1119 (8th Cir. 2014) ("[W]e interpret the phrase in furtherance of the conspiracy broadly."); United States v. Duka, 671 F.3d 329, 348 (3d Cir. 2011) ("The threshold for establishing that a statement was made in furtherance of a conspiracy is not high: the in furtherance of requirement is usually given a broad interpretation." (internal alteration and quotation marks omitted)); United States v. Hynes, 467 F.3d 951, 970 (6th Cir. 2006) ("[T]his court has broadly construed the requirement that statements between coconspirators be 'in furtherance' of the conspiracy . . . ."); United States v. Smith, 441 F.3d 254, 262 (4th Cir. 2006) ("Most courts, including the Fourth Circuit, construe the in furtherance of requirement so broadly that even causal relationships to the conspiracy suffice to satisfy the exception." (internal quotation marks omitted)); United States v. Limones, 8 F.3d 1004, 1008 (5th Cir. 1993) ("[T]he term 'in furtherance' of a conspiracy is broadly construed . . . .").

1       The government need only establish those foundational facts by a
2   preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S.
3   171, 176 (1987).  Because co-conspirator statements fall within a
4   "firmly rooted hearsay exception" that is "steeped in our
5   jurisprudence," once foundational facts are established, "a court
6   need not independently inquire into the reliability of such
7   statements."  *Id.* at 182-83.

8       "It is well established" that Rule 801(d)(2)(E) "is to be
9   construed broadly in favor of admissibility."  *United States v.*
10  *McMurray*, 34 F.3d 1405, 1412 (8th Cir. 1994).  Although a co-
11  conspirator's statement alone is not enough to establish that it
12  qualifies for admission under Rule 801(d)(2)(E), a court may consider
13  the statement itself in evaluating its admissibility, *United States*
14  *v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988), and the burden to
15  introduce extrinsic evidence supporting admissibility is not a heavy
16  one, *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994).

17      **G.   Audio Recording and Transcript**

18      The government will introduce clips from an audio recording of
19  defendant's interview by law enforcement agents on September 3, 2020.
20  A recording is admissible upon a showing that it is "accurate,
21  authentic, and generally trustworthy."  *United States v. King*, 587
22  F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a
23  recording depicts evidence that the witness observed is sufficient to
24  authenticate the recording.  Fed. R. Evid. 901(b); *United States v.*
25  *Smith*, 591 F.3d 974, 979-80 (8th Cir. 2010).

26      There is no rigid set of requirements to lay the foundation for
27  the government's evidence.  As long as the government makes a *prima*
28  *facie* showing of authenticity, the "probative force of the evidence

12

1  offered is, ultimately, an issue for the jury." United States v.
2  Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989).  The government will
3  rely on the testimony of SAPD Detective Prewett, who can authenticate
4  the recording of the interview he participated in with defendant.

5      All duly admitted recorded conversations must be played in open
6  court.  Allowing jurors to take into the jury deliberation room
7  recorded conversations that were not played in open court is
8  structural error requiring automatic reversal if a defendant objects
9  to allowing the jurors to have the un-played calls in the jury room.
10 United States v. Noushfar, 78 F.3d 1442, 1445-46 (9th Cir. 1996).

11     A lay witness, including a participant in a recorded
12 conversation, may give opinion testimony on the meaning of otherwise
13 vague or ambiguous statements made in the recordings.  See United
14 States v. Freeman, 498 F.3d 893, 902 (9th Cir. 2007) ("A lay witness
15 may provide opinion testimony regarding the meaning of vague or
16 ambiguous statements [in recorded conversations]"); United States v.
17 De Peri, 778 F.2d 963, 977-78 (9th Cir. 1985).

18     The government has prepared written transcripts of the audio
19 recordings as an aid to the jury in listening to recordings.  See
20 United States v. Turner, 528 F.2d 143, 167 (9th Cir. 1975)
21 (permitting the transcripts of sound recordings to be used
22 contemporaneously with the introduction of the recordings into
23 evidence).  Copies of the government's transcripts have been provided
24 to the defense and are available, should the Court desire them in
25 advance of trial.  Defense counsel has agreed that the transcript is
26 accurate and has no objection to its use.  The transcripts will be
27 displayed on a screen simultaneous to the playing of the audio files,
28 but the transcripts will not be admitted into evidence.

1

### H.   Photographic Evidence

2      The government intends to introduce into evidence photographs of

3   Chae's apartment following the robbery on June 20, 2020 and of

4   evidence found during a September 3, 2020 search of defendant's home

5   in Lutz, Florida.

6      Photographs are generally admissible as evidence.  See United

7   States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs

8   of crime scene admissible).  Photographs should be admitted so long

9   as they fairly and accurately represent the event or object in

10   question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir.

11   1978).  The Ninth Circuit has held that "[p]hotographs are admissible

12   as substantive as well as illustrative evidence."  United States v.

13   May, 622 F.2d 1000, 1007 (9th Cir. 1980).

14

### I.   Business Records

15      Federal Rule of Evidence 803(6) carves out an exception to the

16   hearsay rule for business records.  A document is admissible under

17   this rule if two foundational facts are established: (1) the document

18   was made or transmitted by a person with knowledge at or near the

19   time of the incident recorded, and (2) the document was kept in the

20   course of a regularly conducted business activity.  United States v.

21   Ray, 930 F.2d 1368, 1370 (9th Cir. 1990); Kennedy v. Los Angeles

22   Police Dep't, 901 F.2d 702, 717 (9th Cir. 1990), overruled on other

23   grounds by Hunter v. Bryant, 502 U.S. 224 (1991).  In determining if

24   these foundational facts have been established, the court may

25   consider hearsay and other evidence not admissible at trial.  See

26   Fed. R. Evid. 104(a), 1101(d)(1); Bourjaily, 483 U.S. at 178-79.

27      The foundation may be established either through a custodian of

28   records or "another qualified witness."  Fed. R. Evid. 803(6).  "The

14

phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record keeping system." United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993); Ray, 930 F.2d at 1370.  The government does not need to establish when and by whom the document was prepared.  Ray, 930 F.2d at 1370.

Challenges to the accuracy or completeness of the business records ordinarily goes to the weight of the evidence and not its admissibility.  See, e.g., La Porte v. United States, 300 F.2d 878, 880 (9th Cir. 1962).  Because Rule 803(6) represents a firmly rooted hearsay exception, if non-testimonial evidence meets the requirements for admission under the Rule, no further showing of reliability is necessary for admission under the Confrontation Clause.  See Ohio v. Roberts, 448 U.S. 56, 66 n.8 (1980), overruled on other grounds by Crawford v. Washington, 541 U.S. 36 (2004); Ray, 930 F.2d at 1371; United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989); United States v. Baker, 855 F.2d 1353, 1360 (8th Cir. 1988).

Moreover, computer printouts from that are compilations of data regularly maintained by a business are admissible as records of regularly conducted activity pursuant to 803(6).  See United States v. Catabran, 836 F.2d 453, 458 (9th Cir. 1988) ("Any question as to the accuracy of the printouts, whether resulting from incorrect data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printouts, not their admissibility."); United States v. Bonallo, 858 F.2d 1427, 1436 (9th Cir. 1988) ("The fact that it is possible to alter data contained in a computer is plainly insufficient to establish untrustworthiness.  The mere possibility that the logs may have been altered goes only to the weight of the

1   evidence not its admissibility."); U-Haul Int'l v. Lumbermans Mutual
2   Casualty Co., 576 F.3d 1040, 1043-44 (9th Cir. 2009) (computer
3   records kept in the regular course of business activity properly
4   admitted under Rule 803(6)).

5       Certified domestic records of regularly conducted activity are
6   self-authenticating when accompanied by a written declaration
7   establishing that (1) the records must have been made at or near the
8   time by, or from information transmitted by, a person with knowledge;
9   and (2) the records must have been made or kept in the course of a
10  regularly conducted business activity.  Fed. R. Evid. 902(11).

11      **J.   Prior Identifications Admissible**

12      Victims and eyewitnesses Mina Chae and Daniel Casillas
13  identified Williams (Casillas only) and Revels (Chae and Casillas) as
14  the perpetrators of the robbery.  The eyewitnesses signed and dated
15  photographs establishing their identification.  If Chae and Casillas
16  testify, the government may introduce these eyewitness
17  identifications, albeit through another witness, SAPD detective David
18  Prewett.

19      The Federal Rules of Evidence provide for the admission of such
20  initial statements of identification, provided certain precautions
21  are met. Rule 801(d)(1)(C) of the Federal Rules of Evidence declares:
22  "A statement is not hearsay if ... [t]he declarant testifies at the
23  trial or hearing and is subject to cross-examination concerning the
24  statement and the statement is ... one of identification of a person
25  made after perceiving him."  The Ninth Circuit has held that this
26  rule permits "a witness to testify regarding identifications made by
27  another witness."  United States v. Elemy, 656 F.2d 507, 508 (9th
28  Cir. 1981).  Accordingly, any hearsay objection to Detective

16

1    Prewett's anticipated testimony regarding the eyewitness

2    identifications should be overruled.  United States v. Jarrad, 754

3    F.2d 1451, 1456 (9th Cir. 1985).

4         **K.    Expert Witness Testimony**

5         The government intends to offer testimony from HSI SA Flood.  SA

6    Flood will testify regarding the general methods of operation for

7    marijuana dealers, the use of firearms by those engaged in the

8    illegal sale of narcotics, and the methods generally used by those

9    engaged in the robbery of drug dealers.  SA Flood will also testify

10   to the use of cellular telephones by those engaged in sales of

11   marijuana or engaged in the robbery of drug dealers.  The government

12   provided notice of SA Flood's anticipated testimony to defense

13   counsel on September 22, 2021 and April 28, 2022.

14        The government also intends to offer the expert testimony of FBI

15   SA Jeffrey Bennett.  SA Bennett will testify regarding the

16   interpretation of cellular telephone records, specifically, records

17   of calls made and received by the cellular telephones believed to be

18   used by defendant and his co-conspirators.  SA Bennett will testify

19   regarding the approximate geographic location area in which the

20   Subject Telephones were operating during specific periods of time,

21   including the dates and times of events alleged in the indictment.

22   The government provided notice of SA Flood's anticipated testimony on

23   May 7, 2021.

24        A qualified expert witness may provide opinion testimony on the

25   issue in question if specialized knowledge will assist the trier of

26   fact.  Fed. R. Evid. 702.  The Court has broad discretion to

27   determine whether to admit expert testimony.  United States v.

28   Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987). These experts'

                                    17

testimony should be allowed because they will assist the trier of fact in understanding the evidence and determining facts at issue. See United States v. Dunn, 946 F.2d 615, 618 (9th Cir. 1991), as amended (Oct. 1, 1991) ("The Ninth Circuit allows expert testimony regarding the identity of the manufacturer to establish that a gun travelled in interstate commerce before the defendant received it."); United States v. Sherwood, 98 F.3d 402, 408 (9th Cir. 1996), as amended (Oct. 28, 1996) (affirming admission of fingerprint expert's testimony).

### L.    Charts and Summary Witnesses

To streamline the presentation of evidence for the jury, the government intends to use summary charts as part of its case in chief.  These charts summarize the cell site location data contained in certified business records, which SA Bennett reviewed and prepared summary charts to assist the jury in its review.

Charts and summaries of evidence are governed by Federal Rule of Evidence 1006, which permits the introduction of charts, summaries, or calculations of voluminous writings, recordings, or photographs which cannot conveniently be examined in court.  See Fed. R. Evid. 1006.  Accordingly, a summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents upon which the summary is based are voluminous, admissible, and available for inspection.  Id.; see also United States v. Meyers, 847 F.2d 1408, 1412 (9th Cir. 1988).  All that is required for the rule to apply is that the underlying writings be voluminous and that in-court examination not be convenient.  United States v. Scales, 594 F.2d 558, 562 (6th Cir. 1979).  Although the materials underlying the

1     summary must be "admissible," they need not themselves be "admitted"

2     into evidence. <u>Meyers</u>, 847 F.2d at 1412.

3         In addition, the summary chart must be accurate, authentic, and

4     properly introduced. <u>Scales</u>, 594 F.2d at 562. Where a chart does

5     not contain complicated calculations that would require an expert for

6     accuracy, authentication of the chart requires only that the witness

7     (1) have properly catalogued the exhibits and records upon which the

8     chart is based; and (2) have knowledge of the analysis of the records

9     referred to in the chart.

10        Neither of these requirements necessitates any special

11    expertise. The person who supervises the compilation of the summary

12    chart is the proper person to attest to its authenticity and

13    accuracy. <u>Id.</u> at 563. In addition, summary charts may be used by

14    the government in its opening statement. Indeed, "such charts are

15    often employed in complex conspiracy cases to provide the jury with

16    an outline of what the government will attempt to prove." <u>United</u>

17    <u>States v. De Peri</u>, 778 F.2d 963, 979 (3d Cir. 1985) (approving

18    government's use of chart); <u>United States v. Rubino</u>, 431 F.2d 284,

19    290 (6th Cir. 1970) (same).

20        Also, apart from Rule 1006, a summary of evidence may be

21    presented to the jury with proper limiting instructions. Rule 611(a)

22    recognizes that the trial court must "exercise reasonable control

23    over the mode and order of interrogating witnesses and presenting

24    evidence so as to (1) make the interrogation and presentation

25    effective for the ascertainment of the truth, [and] (2) avoid

26    needless consumption of time . . . ." Fed. R. Evid. 611(a); <u>see also</u>

27    <u>United States v. Gardner</u>, 611 F.2d 770, 776 (9th Cir. 1980) (in tax

28    case, use of chart summarizing defendant's assets, liabilities, and

19

expenditures "contributed to the clarity of the presentation to the jury, avoided needless consumption of time, and was a reasonable method of presenting the evidence").

**M.   Scope of Cross-Examination of Defendant**

If defendant testifies at trial, he waives his right against self-incrimination, and the government will cross-examine him on all matters reasonably related to the subject matter of his testimony. See, e.g., Fitzpatrick v. United States, 178 U.S. 304 (1971) ("The defendant cannot assert a self-incrimination privilege 'on matters reasonably related to the subject matter of his cross-examination.'"); United States v. Black, 767 F.2d 1334, 1341 ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.") (internal quotations and citation omitted).  The scope of cross-examination is within the discretion of the trial court.  Fed. R. Evid. 611(b).  Defendant has no right to avoid cross-examination on matters that call into question his claim of innocence.  United States v. Mehrmanesh, 682 F.2d 1303, 1310 (9th Cir. 1982); United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

Similarly, should defendant testify, the government may use the particulars of defendant's prior felony convictions/arrests to attack his character for truthfulness.  Were defendant to testify, for example, that he did not know that a robbery would occur when he arranged the meeting between Casillas and Williams, he would place his credibility at issue and open the door for the use of extrinsic evidence to attack his credibility.  See United States v. Alexander,

48 F.3d 1477, 1488 (9th Cir. 1995), as amended on denial of reh'g
(Apr. 11, 1995) ("When a defendant takes the stand and denies having
committed the charged offense, he places his credibility directly at
issue.").  In that event, the government would be entitled to offer
evidence of defendant's July 19, 2012 conviction in this district for
wire fraud under Federal Rule of Evidence 609(a)(1)(B), because it is
a conviction for a crime punishable by imprisonment for more than one
year, and under Rule 609(a)(2) because the crime of wire fraud has an
element of dishonesty.

### N.   Vicarious Liability

The government emphasizes that counts two and three of the
Second Superseding Indictment propose a vicarious theory of liability
against defendant.  The government does not to need to prove that
defendant himself executed the robbery or brandished a firearm in
furtherance of the conspiracy.  The government alleges that defendant
is responsible for the conduct underlying these counts because of the
actions of his co-conspirators.  Under that circumstance, it would be
proper for the Court to instruct the jury on vicarious liability for
these offenses.  Cf. United States v. Castaneda, 16 F.3d 1504, 1511
(9th Cir. 1994) (finding that it was proper for the district court to
instruct jury on Pinkerton liability where there was evidence to
support that theory).

The government also will proceed on an alternate theory of
liability – aiding and abetting.  An aiding and abetting instruction
is proper even when the indictment does not specifically charge that
offense, because all indictments are read to embody that offense in
each count.  United States v. Vaandering, 50 F.3d 696, 702 (9th Cir.
1995).  Because defendant knowingly arranged the deal between

Casillas and Williams so that Williams could rob Casillas, defendant aided and abetted the commission of the robbery and the brandishing of firearms by Williams and Revels in furtherance of the robbery. The jury need not reach a unanimous agreement on the manner by which the defendant provided assistance.  United States v. Kim, 196 F.3d 1079, 1083 (9th Cir. 1999).

**VII. CONCLUSION**

The government respectfully reserves the right to supplement or modify this Trial Memorandum as may be appropriate.